## AFFIDAVIT

I, Dennis P. Senft, Jr., a Special Agent with the Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

1. Your Affiant, Special Agent ("SA") Dennis P. Senft, Jr., is a duly sworn member of Homeland Security Investigations ("HSI") and has been employed as a Special Agent with HSI since 2007. Your Affiant completed the Federal Criminal Investigator Training Program and the ICE Special Agent Training at the Federal Law Enforcement Training Center located in Glynco, Georgia. Your Affiant received training in drug and money laundering investigations. Your Affiant also received additional training in methods to trace illegal proceeds and prove financial crimes, asset forfeiture and financial investigations. Your Affiant is currently assigned to the HSI Office of the Special Agent in Charge, Baltimore, Maryland, as well as to the HIDTA Task Force in Southern Maryland.

2. Your Affiant is responsible for investigations involving specified unlawful activities, to include drug smuggling and money laundering, among other violations, occurring in the District of Maryland. Your Affiant is also responsible for enforcing criminal and civil violations of the Money Laundering Control Act as found in Title 18, United States Code. Your Affiant has acted as a case agent and support agent when participating in investigations of criminal activity, including but not limited to, the investigation of drug smugglers and money launderers. During these investigations, your Affiant has also participated in the execution of search warrants and the seizure of evidence indicating drug smuggling and money laundering violations. Your Affiant has obtained financial records and related information through various database queries and

subpoenas and has analyzed the information for indications of bulk cash smuggling and money laundering.

3. As an agent of HSI, your Affiant has affirmed to applications of search warrants and participated in and gained experience in Title III wire intercepts. HSI, particularly under the auspices of HIDTA, is responsible for the enforcement of federal narcotics laws. Your Affiant is cross-designated and has the authority to conduct Title 21 investigations and enforcement activities. Your Affiant has also worked with various law enforcement officers, from both State and Federal agencies, who have experience in the fields of bulk cash smuggling, money laundering and drug trafficking investigations.

## PROBABLE CAUSE

### Marijuana Conspiracy

4. Between on or about March 7, 2011 and on or about December 3, 2012, in the District of Maryland and elsewhere, **JUSTIN SAVAGE** ("**SAVAGE**") knowingly conspired to distribute and possess with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841. **SAVAGE**'s coconspirators included but were not limited to Billymir Mancilla-Brevichet, a/k/a B, a/k/a Billy, a/k/a Shrek, a/k/a Hano, Sean Sekuler, Chamron Thach, a/k/a Sham, a/k/a Bong, Mikhnail DelRosario, Carlos Escobar, a/k/a Esco, Guillermo Ulloa, a/k/a Gmo, Sean Vithidkul, a/k/a Wang, and Anthony Savage.

5. In December 2012, numerous individuals were arrested for their participation in this marijuana and money laundering conspiracy. Individuals have provided information to law enforcement in exchange for potentially lower sentencing



recommendations from the government. In particular, Cooperating Informant #1 ("CI #1") and Cooperating Informant #2 ("CI #2") have provided information about their knowledge of **SAVAGE**'s participation in this marijuana and money laundering conspiracy. Information provided by CI #1 and CI #2 have been corroborated by law enforcement by discussions intercepted on Title III wiretaps, surveillance, bank records, and seizures of cash and marijuana as discussed further below.

6. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that in or about September 2011, **SAVAGE** had a marijuana grow operation in his apartment in Northern California. **SAVAGE** provided instructions and addresses to co-conspirators, including CI #2, to package and ship parcels containing marijuana to the East Coast, including to Montgomery County, Maryland. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** in addition to the marijuana that **SAVAGE** grew in his apartment, **SAVAGE** also purchased large quantities of marijuana that he brought to his apartment and directed co-conspirators to package and ship to his customers on the East Coast, including to Montgomery County, Maryland. CI #2 stated that they observed and discussed directly with **SAVAGE** that **SAVAGE** directed that a portion of the marijuana be heat sealed and placed in bags, and then **SAVAGE** took the marijuana to provide to couriers to bring the marijuana to the East Coast, including to Montgomery County, Maryland.

7. CI #1 stated that he observed **SAVAGE** travel to northern California to meet Mancilla's sources of marijuana supply and to Los Angeles, California to visit Mancilla on a regular basis. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that **SAVAGE** and Mancilla conspired to engage in marijuana



trafficking by pooling their resources so that they could afford and acquire larger quantities of marijuana.

8. Information obtained by investigators during interviews of Sources of Information ("SOI's"), including CI #1 and CI #2, who have provided additional information that was corroborated, revealed that during the time of the marijuana conspiracy, Mancilla and **SAVAGE** had overlapping marijuana distribution networks, and that both Mancilla and **SAVAGE** were considered "bosses" in the conspiracy. CI #1 stated that they observed and discussed directly with **SAVAGE** that Mancilla and **SAVAGE** acquired large quantities of high-quality marijuana from sources of supply in Humboldt County, California, and other sources. CI #1also stated that marijuana was stored and packaged in both **SAVAGE**'s and Mancilla's residences. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that Mancilla and **SAVAGE** then arranged for the transport of this marijuana from California to co-conspirators in Montgomery County, Maryland and surrounding areas via individuals traveling on airlines and in vehicles, and by shipping 2-10 pound packages through the United States Postal Service priority mail system. Sekuler and other members of the conspiracy assisted with the packaging and shipment of these marijuana packages. Mancilla charged between $3,000 and $4,000 per pound of marijuana.

9. Information obtained by investigators during interviews of SOI's, including CI #1 and CI #2, revealed that during the time of the marijuana conspiracy, **SAVAGE**, among others, shipped large amounts of marijuana in various vehicles from California to Maryland. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that **SAVAGE** directed Anthony Savage to drive marijuana loads



using U-Haul and Penske trucks and in Winnebagos. Furthermore, CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that on at least four occasions from August 2012 to October 2012, Mancilla and **SAVAGE** used co-conspirators, including Anthony Savage, to transport at least 100 pounds of marijuana at a time in various vehicles traveling from California to Maryland. CI #2 observed **SAVAGE** follow some of the loads from California to the East Coast in another vehicle or travel to the East Coast separately and met the load of marijuana at a storage facility. Savage helped unload the marijuana at the storage facility. This marijuana was brought to storage facilities in Maryland. CI #1 and CI #2 both stated that they observed and discussed directly with **SAVAGE** that Mancilla and **SAVAGE** then arranged for co-conspirators to receive multi-pounds of marijuana for re-distribution. Moreover, co-conspirators traveled to California to meet Mancilla to directly acquire multi-pound quantities of marijuana for shipment and transport to Maryland.

10. On October 11, 2012, Anthony Savage was stopped by Kansas Highway Patrol on Interstate 70 in Wabaunsee County, Kansas, for a traffic violation while driving a Jyco motor home bearing California license 4MJG017, registered to **JUSTIN SAVAGE** at 2503 Marshfield Road, Vallejo, California 94591. Based on the Kansas Highway Patrol officers' training and experience, a canine scan of the motor home was conducted, and the canine alerted to the presence of narcotics. A subsequent search of the vehicle revealed eight large duffle bags containing 165 packages, totaling 184.5 pounds of marijuana.

11. During his participation in the conspiracy, **SAVAGE** conspired to distribute and possess with intent to distribute 700 kilograms or more but less than 1,000



kilograms of marijuana.

## Money Laundering Conspiracy

12. Between on or about March 7, 2011 and on or about December 3, 2012, in the District of Maryland and elsewhere, **SAVAGE** knowingly conspired with Mancilla, Sekuler, Thach, DelRosario, Escobar, Ulloa, Vithidkul, Savage, and others, to conduct and attempt to conduct financial transactions which they knew to involve the proceeds of the distribution and possession with intent to distribute marijuana, as described above, with the intent to promote the carrying on of the marijuana distribution, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said distribution, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

13. During the time frame of the money laundering conspiracy, Mancilla and **SAVAGE** arranged for payment for the marijuana they distributed in various ways. CI #1 stated that they observed and discussed directly with **SAVAGE** that Mancilla and **SAVAGE** arranged for drug customers and co-conspirators to deposit the proceeds from the sale of marijuana that Mancilla and **SAVAGE** distributed into bank accounts that they controlled and were held in the names of various businesses. CI #1 stated that Mancilla provided bank account numbers to his drug customers into which the deposits were to be made, and then those customers arranged for the deposit of drug proceeds in the form of cash in amounts less than $10,000 into the bank accounts identified by Mancilla. Law enforcement has learned through this investigation that Mancilla, **SAVAGE** and other co-conspirators structured financial transactions between each other and other persons to evade Internal Revenue Service ("IRS") filing requirements for



transactions involving more than $10,000 in cash payments in a single transaction, and thereby further concealed from the government large cash transactions by narcotics dealers.

14. Bank account information obtained via Grand Jury Subpoena, from Bank of America, for two accounts owned by **SAVAGE**, one in the name of **JUSTIN SAVAGE** and one in the name of Savage Photography, revealed that from June 2011 to October 2012, there were approximately $313,000 of deposits into these accounts. Subsequent financial database queries for **SAVAGE** revealed multiple Currency Transaction Reports ("CTR"), from November 22, 2010 to July 10, 2012, filed on Bank of America accounts in the name of **SAVAGE**, doing business as Savage Photography. Most CTR's were generated for multiple deposits and/or withdrawals conducted at various Bank of America locations that totaled over $10,000 in a 24 hour period. A check of various databases for records pertaining to Savage Photography revealed no such business registered in the State of California. Commercial database and Internet searches also yielded negative results for Savage Photography. Information obtained from the interviews of CI #1 and CI #2 revealed that Savage Photography and its bank accounts were used as a front business to launder drug proceeds.

15. In addition, Mancilla arranged for drug customers to provide drug proceeds to co-conspirators, who would arrange for those drug proceeds, in the form of bulk cash, to be transported via individuals traveling via airplane from Maryland to Mancilla in California in amounts ranging from $10,000 to $100,000. According to information obtained during an interview with CI #1, **SAVAGE** picked up proceeds and delivered them to Mancilla in California. For example, information obtained from the



Case 8:13-mj-00703-CBD Document 1-1 Filed 04/08/13 Page 8 of 9

interview of SOI's revealed that money couriers identified in this investigation delivered drug proceeds to **SAVAGE** on at least four occasions which totaled approximately $600,000.

16. On December 7, 2012, HSI West Virginia received information from the West Virginia State Police ("WVSP") pertaining to a traffic stop that had been initiated at the Elk View Park n Ride in Kanawha County, WV. The WVSP stated that the driver, identified as **SAVAGE**, was traveling from Maryland to his residence in California and upon initial contact he seemed very nervous and uneasy to speak with them. **SAVAGE** consented to a search of the vehicle. During the search, WVSP located several bundles of "heat wrapped" currency, totaling $106,650, in the middle passenger area of the vehicle in addition to several more packages of currency in a suitcase, located in the trailer being towed by the aforementioned vehicle. **SAVAGE** stated that he did not know anything about the additional currency and abandoned the currency to the WVSP.

17. Finally, information obtained from the interviews of various SOI's, including CI #1 and CI #2, revealed Mancilla arranged for drug customers to mail drug proceeds from Maryland to Mancilla in California.

18. As set forth above, **SAVAGE** participated in several financial transactions involving proceeds of the marijuana conspiracy which were designed to conceal the nature, location, source, ownership and control of those proceeds. The conspiracy involved at least $1,000,000 but less than $2,500,000 of laundered funds.

## CONCLUSION

19. In sum, based on the above facts, I believe that there is probable cause that **JUSTIN SAVAGE** and others knowingly, intentionally, and unlawfully conspired to

8



possess with the intent to distribute 100 kilograms or more of marijuana, in violation of Title 21, United States Code, Section 846, and conspired to launder money, in violation of Title 18, United States Code, Section 1956(h).

_____
Special Agent Dennis P. Senft, Jr.
Homeland Security Investigations

Sworn to and subscribed before
me this ___ day of April 2013.

_____
Charles B. Day
United States Magistrate Judge